**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

CHRISTO MOTSKA (a/k/a KRISTO MOTSKA),

Plaintiff,

-against-

APOLON CONSTRUCTION CORP.,
a/b/a APOLON CONSTRUCTION GROUP,
ERION HASKO, individually, NICK HASKO,
Individually, JOHN DOES 1–10, and XYZ
CORPORATIONS 1–10,

Defendants.

Case No.: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Christo Motska (also known as Kristo Motska) ("Plaintiff"), by and through his undersigned counsel, brings this action against Defendants Apolon Construction Corp., Apolon Construction Group, and Erion Hasko (collectively, "Defendants"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for unpaid overtime wages, unpaid contractual wages, unlawful wage deductions, statutory wage-notice and wage-statement violations, breach of a written employment contract, and related state-law claims arising out of Plaintiff's employment as a Project Manager for Defendants from on or about November 4, 2024 through July 31, 2025.

2. Plaintiff brings this action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA"); the New York Labor Law, Articles 6 and 19, and the regulations promulgated thereunder, including 12 N.Y.C.R.R. § 142-2.2 (the "NYLL"); the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the common law of the State of New York.

3. Defendants knowingly misclassified Plaintiff as exempt from federal and state overtime requirements, suffered or permitted Plaintiff to work hours well in excess of forty (40) per workweek without paying him the legally required overtime premium, failed to reimburse Plaintiff for approximately $8,000 in business expenses incurred on Defendants' behalf,

designated $5,000 of Plaintiff's base salary as funds with which Plaintiff was required to purchase his own health insurance in contravention of NYLL § 193, failed to pay Plaintiff the agreed-upon balance of a salary increase, and terminated Plaintiff's fixed-term employment without the 90 days' written notice required by the parties' written Employment Agreement, manufacturing a pretextual "for cause" recital in an effort to evade contractual notice and severance obligations, and to deny Plaintiff the wages that would have become due for the remainder of the fixed one-year term of employment.

4. Plaintiff seeks unpaid wages and overtime compensation, liquidated damages, statutory damages, contract damages, declaratory relief, prejudgment and post-judgment interest, attorneys' fees, costs, and all other relief to which he is entitled.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise out of the same case or controversy as the federal claims and form part of the same common nucleus of operative facts.

7. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because Defendants reside in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, in Westchester County, where Defendants' principal place of business is located.

9. Pursuant to Local Civil Rule 18, this action is properly assigned to the White Plains Courthouse.

## PARTIES

### A. Plaintiff

10. Plaintiff Christo Motska is a natural person residing in the State of New York, with a mailing address at 45-02 Ditmars Boulevard, Apt. 208, Astoria, New York 11105. Plaintiff was

employed by Defendants as a Project Manager from on or about November 4, 2024 through July 31, 2025.

11. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) and NYLL §§ 2(5), 190(2).

### B. Corporate Defendants

12. Defendant Apolon Construction Corp. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 941 McLean Avenue, Suite #380, Yonkers, New York 10704. Apolon Construction Corp. is the entity identified on the company's letterhead, on Plaintiff's payroll earnings statements, and on the Separation Agreement tendered to Plaintiff on July 31, 2025.

13. Upon information and belief, Defendant Apolon Construction Corp does business under the name "Apolon Construction Group," the name used in Plaintiff's Employment Agreement dated November 4, 2024. Plaintiff's payroll records and Separation Agreement identify Apolon Construction Corp., while the Employment Agreement identifies Apolon Construction Group. Plaintiff therefore alleges that Apolon Construction Corp. and Apolon Construction Group are the same business enterprise and/or that Apolon Construction Group is a trade name used by Apolon Construction Corp.

14. Plaintiff therefore alleges that Apolon Construction Corp. and Apolon Construction Group are the same business enterprise and/or that Apolon Construction Group is a trade name used by Apolon Construction Corp. Upon information and belief, Apolon Construction Corp. and Apolon Construction Group are the same legal entity operating under different names, alter egos of one another, successor entities, and/or joint employers under the FLSA's economic-realities test and the NYLL's definition of "employer." They are referred to collectively as the "Corporate Defendants."

15. At all relevant times, the Corporate Defendants were and are "employers" of Plaintiff within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 2(6), 190(3).

16. At all relevant times, the Corporate Defendants constituted an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A). The Corporate Defendants are engaged in the construction industry; their

employees regularly handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce; and the Corporate Defendants have annual gross revenues of not less than $500,000.

## C. Individual Defendant

17. Defendant Erion Hasko is, upon information and belief, the Principal of Apolon Construction Corp. and Apolon Construction Group. Mr. Hasko signed the July 31, 2025 Separation Agreement on behalf of "Apolon Construction Corp." in the capacity of "Principal."

18. Upon information and belief, Defendant Hasko exercised authority over hiring and firing decisions, directed Plaintiff's work assignments, supervised Plaintiff's day-to-day activities, controlled Plaintiff's schedule, and participated in employment decisions affecting Plaintiff. Plaintiff's employment, compensation, and termination were all subject to the direction, approval, and control of Defendant Hasko. Mr. Hasko exercised that power as to Plaintiff, including by directing Plaintiff's day-to-day work, increasing Plaintiff's salary in the spring of 2025, and ultimately terminating Plaintiff's employment.

19. At all relevant times, Mr. Hasko was therefore an "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 2(6), 190(3), under the economic-realities and operational control test governing "employer" status under the FLSA and the NYLL, and is jointly and severally liable with the Corporate Defendants for the violations alleged herein.

20. The Employment Agreement was executed on behalf of Apolon Construction Group by an individual identified as "Nick Hasko." Plaintiff is presently unaware of the full identity, ownership interest, and legal relationship of that individual to Defendants and therefore alleges, upon information and belief, that "Nick Hasko" is among the JOHN DOE and/or XYZ DEFENDANTS referenced herein. Plaintiff reserves the right to amend this Complaint upon discovery of his true identity and role.

## FACTUAL ALLEGATIONS

### *A. Plaintiff's Hire and the November 4, 2024 Employment Agreement*

21. On or about November 4, 2024, Plaintiff and Defendant Apolon Construction Group entered into a written "Employment Agreement — Project Manager" (the "Employment Agreement"), a true and correct copy of which Plaintiff will produce in discovery.

22. Under § 1.A of the Employment Agreement, Plaintiff was "hired … as a PROJECT MANAGER" subject to "the general supervision and pursuant to the orders, advice, and direction of employer."

23. Under § 3 of the Employment Agreement, the term of employment was "a period of 1 year, commencing 11.04.2024, and terminating 11.04.2025," subject only to prior termination as provided in the Employment Agreement, with automatic renewal for additional one-year periods absent notice of termination.

24. Under § 4 of the Employment Agreement, Defendants agreed to pay Plaintiff "compensation at the rate of gross $65,000 yearly," with the additional recital that "[i]n this payment is included the cost of insurance that should be purchased directly by the employee."

25. Under § 4 of the Employment Agreement, Defendants further agreed to "reimburse employees for all necessary expenses incurred by employee while traveling pursuant to employer's directions."

26. Under § 7 of the Employment Agreement, Defendants agreed that "[t]he Company shall reimburse the Employee for all business expenses … pursuant to Company policy."

27. Under § 18.A of the Employment Agreement, "[t]his Agreement may [be terminated on] 90 days' written notice to the other party."

28. Under § 18.B of the Employment Agreement, only "[i]n the event of any violation" of the Agreement by a party may the employer "terminate employment without notice with compensation to employee only to the date of such termination."

29. Annex 1 to the Employment Agreement describes Plaintiff's duties, which included: oversight of cost control; monitoring preparation of contract documents, budgets, scheduling, contracting, and processing of invoices; managing and monitoring subcontractor work; weekly

updates of EGNYTE folders; coordinating, planning, and managing schedules for contractors and subcontractors; issuing design criteria; reporting project progress and budget to the client; reviewing plans for cost-effectiveness; coordinating architect and engineer designs; conducting design review meetings; and ensuring building-code compliance.

30. The duties enumerated in Annex 1 were performed by Plaintiff subject to the "general supervision" and "orders, advice, and direction" of Defendants and did not involve the management of a department, the supervision of two or more full-time employees as a primary duty, or the routine exercise of discretion and independent judgment as to matters of significance.

### B. Hours Worked and Defendants' Failure to Pay Overtime

31. Throughout his employment, Plaintiff regularly worked in excess of forty (40) hours per workweek. In a typical workweek, Plaintiff worked approximately fifty (50) hours, and in many workweeks worked materially more than that.

32. Plaintiff's overtime hours included: responding to work-related emails and text messages after regular business hours and on weekends; participating in after-hours telephone calls and meetings with management regarding active projects; preparing and submitting required daily project reports; performing weekend and evening site visits as project schedules required; and updating EGNYTE project folders outside regular business hours.

33. Defendants knew or should have known that Plaintiff was working in excess of forty (40) hours per week. Defendants required, suffered, or permitted Plaintiff to perform all such work and routinely communicated with Plaintiff via email and telephone outside business hours regarding work matters.

34. Defendants did not pay Plaintiff at any premium rate for hours worked in excess of forty (40) per workweek. As confirmed by Plaintiff's payroll earnings statements, Defendants paid Plaintiff a flat weekly salary (designated "Regular" pay on a "Salaried" basis) regardless of the number of hours actually worked, and the earnings statements reflect no hours worked and no overtime hours or overtime rate of any kind.

35. Defendants did not maintain accurate records of the actual hours worked by Plaintiff each workweek, in violation of 29 U.S.C. § 211(c) and NYLL § 195(4).

36. Plaintiff was, at all relevant times, a non-exempt employee under the FLSA and the NYLL. He did not meet the duties test for any FLSA or NYLL exemption; he was subject to close supervision; he did not direct the work of two or more full-time subordinates as a primary duty; he had no authority to hire, fire, or effectively recommend the hiring or firing of any employee. Plaintiff's primary duties consisted of project coordination, reporting, communication with subcontractors, updating project records, monitoring schedules, and ensuring project completion while operating under the direction and supervision of Defendants. Plaintiff lacked authority to bind Defendants contractually and remained subject to Defendants' orders, advice, and direction at all times. Accordingly, Plaintiff did not satisfy the duties requirements for the executive, administrative, or other exemption defenses under the FLSA or NYLL.

37. During portions of Plaintiff's employment, Plaintiff's annualized salary was, in addition, below the salary-basis thresholds required by the NYLL for exemption from overtime in the downstate region.

### C. Plaintiff's Compensation and the Unpaid Balance of the Salary Increase

38. Plaintiff's payroll earnings statements confirm his rates of pay. The earnings statement for the pay period beginning November 4, 2024 (pay date November 13, 2024) reflects "Regular" gross pay of $1,250.00 for the weekly pay period, which annualizes to $65,000 ($1,250.00 × 52), consistent with § 4 of the Employment Agreement.

39. On or about the beginning of 2025, Defendants agreed to increase Plaintiff's annualized base salary from $65,000 to $80,000. The increase was paid for several months prior to Plaintiff's termination, but Defendants did not implement it in payroll as of its agreed effective date.

40. Plaintiff's payroll earnings statements confirm both the existence of the increase and Defendants' delay in implementing it. The final earnings statement (pay period ending August 3, 2025; pay date August 6, 2025) reflects "Regular" gross pay of $1,538.00 for the weekly pay period, which annualizes to approximately $80,000 ($1,538.00 × 52 ≈ $79,976), and reflects year-to-date gross wages of $44,222.00 for calendar year 2025.

41. Reconciliation of the year-to-date figure of $44,222.00 across the thirty-one (31) weekly pay periods of 2025 ending on or before August 3, 2025 establishes that Defendants paid Plaintiff at the former $1,250.00 weekly rate ($65,000 annualized) for the first twelve (12) weekly pay periods of 2025 (the pay periods ending January 5, 2025 through March 23, 2025) and first

paid Plaintiff at the increased $1,538.00 weekly rate ($80,000 annualized) beginning with the pay period ending March 30, 2025.

42. Notwithstanding their agreement to pay Plaintiff at the increased $80,000 rate effective as of the beginning of 2025, Defendants underpaid Plaintiff by the weekly differential of $288.46 ($1,538.46 − $1,250.00) for each of the twelve (12) weekly pay periods between January 5, 2025 and March 23, 2025, leaving unpaid contractual wages of approximately $3,456 (without interest).

43. The single-payment severance figure that Defendants offered in their tendered Separation Agreement, $1,538.00, equals one (1) week of pay at an annualized salary of $80,000 ($80,000 ÷ 52 ≈ $1,538.46), further corroborating the existence of the salary increase.

### D. The $5,000 Health-Insurance Carve-Out

44. Section 4 of the Employment Agreement provides that "[i]n this payment is included the cost of insurance that should be purchased directly by the employee."

45. Defendants represented to Plaintiff during his employment that approximately $5,000 of his stated base salary was intended for Plaintiff to use to purchase his own health insurance coverage.

46. Defendants did not obtain Plaintiff's written authorization, in conformity with NYLL § 193, for any such deduction, withholding, reallocation, or designation of Plaintiff's earned wages for such purposes, or set-aside of wages for the cost of health insurance. The arrangement does not fall within any of the categories of deductions permitted by NYLL § 193(1)(b).

47. Defendants' practice of recasting a portion of Plaintiff's wages as a self-funded "insurance allowance" constituted, in substance and effect, an unauthorized deduction or diversion of wages in violation of NYLL § 193.

### E. Unreimbursed Business Expenses (~$8,000)

48. During his employment, Plaintiff incurred, on Defendants' behalf and in furtherance of Defendants' construction projects, approximately $8,000 in business expenses, including but not limited to mileage and travel expenses; tools, equipment, and materials purchased for Defendants' jobsites; and other necessary expenditures.

49. Notwithstanding the express reimbursement obligation imposed by §§ 4 and 7 of the Employment Agreement, Defendants failed and refused to reimburse Plaintiff for those expenses.

50. After Plaintiff's termination, Defendants attempted to impose post-hoc procedural requirements (prior written approval, specific written direction by management, and submission via "detailed spreadsheets" with "supporting receipts") that are nowhere stated in the Employment Agreement and that were not communicated to Plaintiff during his employment.

### F. Plaintiff's Performance and the Absence of Discipline

51. Throughout his employment, Plaintiff performed his duties faithfully and to the best of his ability, in accordance with § 2 of the Employment Agreement.

52. Plaintiff was never the subject of any written performance warning, Performance Improvement Plan, formal counseling, or other documented disciplinary action by Defendants. Defendants never communicated to Plaintiff that any aspect of his performance placed his employment in jeopardy.

53. Plaintiff received no notice — written or otherwise — of any "violation" of the Employment Agreement, within the meaning of § 18.B thereof, prior to or contemporaneously with Defendants' July 31, 2025 termination of his employment.

### G. The July 31, 2025 Termination and Pretextual "For Cause" Recital

54. On July 31, 2025, by email letter to Plaintiff, Defendants terminated Plaintiff's employment effective that same day. The letter was sent on behalf of "Apolon Construction Corp."

55. The letter asserted that the termination was "with cause" and recited three purported grounds: (a) "failure to provide required job reports and performance reviews"; (b) "repeated arguments and outbursts in the workplace with clients"; and (c) "aggressive and verbal confrontations with clients."

56. The recited grounds are false, exaggerated, and/or unsupported by any contemporaneous documentation. Defendants manufactured them on or shortly before July 31, 2025 for the purpose of avoiding their obligation to give 90 days' written notice and to pay Plaintiff the

wages and benefits that would otherwise accrue during the notice period and through the contractual term.

57. Prior to termination, Plaintiff was never issued a written warning, disciplinary memorandum, counseling notice, suspension, performance improvement plan, or other corrective action document. Defendants never advised Plaintiff that his employment was in jeopardy, nor did they provide him an opportunity to cure any purported performance deficiency. The absence of any prior disciplinary history further demonstrates that Defendants' asserted grounds for for-cause termination were pretextual.

58. Defendants did not provide Plaintiff with 90 days' written notice of termination as required by § 18.A of the Employment Agreement.

59. Defendants' termination of Plaintiff in the middle of a one-year fixed-term contract, without notice and without a bona fide "violation" under § 18.B, was a material breach of the Employment Agreement.

60. Because the Employment Agreement established a fixed one-year term commencing November 4, 2024 and terminating November 4, 2025 (§ 3), and because Defendants terminated Plaintiff on July 31, 2025 without any bona fide "violation" under § 18.B and without the thirty (90) days' written notice required by § 18.A, more than three (3) months — approximately fourteen (14) weeks — remained in the contractual term as of Plaintiff's termination. Under New York law, Plaintiff's damages for Defendants' wrongful mid-term discharge are measured by the compensation that would have become payable during the remainder of the term, reduced only by amounts Plaintiff earned or, with reasonable diligence, could have earned during the unexpired term — a reduction as to which Defendants bear the burden of proof.

### H. The Tendered, Unexecuted Separation Agreement

61. On July 31, 2025, contemporaneously with the termination letter, Defendants tendered to Plaintiff a 10-page "Employment Separation Agreement" offering a single severance payment of $1,538.00 in exchange for a broad general release.

62. Defendant Erion Hasko signed the Separation Agreement on behalf of Apolon Construction Corp., in the capacity of "Principal," on July 31, 2025.

63. Plaintiff did not execute the Separation Agreement. The Separation Agreement therefore is not binding on Plaintiff, no release attaches to Plaintiff's claims, and Plaintiff retains all rights and remedies he had on the date of his termination.

### I. Willfulness

64. Defendants' violations of the FLSA and the NYLL were knowing, willful, and not in good faith. Among other things, Defendants:

65. required Plaintiff to perform work outside regular business hours and refused to compensate him at a premium rate for hours in excess of 40 per workweek;

66. designated a portion of Plaintiff's wages as a self-funded insurance allowance without obtaining the written authorization required by NYLL § 193;

67. failed to pay Plaintiff the full balance of his agreed $80,000 salary while issuing earnings statements that reflected the higher rate, demonstrating Defendants' awareness of the agreed increase;

68. ignored their express contractual obligation to reimburse Plaintiff's business expenses and erected post-hoc procedural barriers to defeat the reimbursement obligation; and

69. manufactured a "for cause" recital on the day of termination, without any contemporaneous documentation, to evade contractual notice and severance obligations.

70. Defendants knew or showed reckless disregard for whether their conduct was prohibited by the FLSA and the NYLL.

**FIRST CAUSE OF ACTION — Failure to Pay Overtime Under the FLSA**
*(29 U.S.C. §§ 207, 216(b) — Against All Defendants)*

71. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

72. At all relevant times, Plaintiff was a non-exempt employee within the meaning of the FLSA.

73. At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

74. Section 7(a) of the FLSA, 29 U.S.C. § 207(a), required Defendants to pay Plaintiff at a rate not less than one and one-half times his regular rate of pay for each hour worked in excess of forty (40) in a workweek.

75. Defendants failed to pay Plaintiff the required overtime premium for hours worked in excess of forty (40) per workweek, in violation of 29 U.S.C. § 207(a).

76. Defendants' violations of the FLSA were knowing, willful, and not in good faith, entitling Plaintiff to a three-year statute of limitations under 29 U.S.C. § 255(a) and to liquidated damages equal to 100% of the unpaid overtime compensation pursuant to 29 U.S.C. § 216(b).

77. Plaintiff is entitled to recover his unpaid overtime compensation, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION — Failure to Pay Overtime Under the NYLL**

*(NYLL Article 19, §§ 650 et seq. and 12 N.Y.C.R.R. § 142-2.2 — Against All Defendants)*

78. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

79. At all relevant times, Plaintiff was a non-exempt employee under the NYLL.

80. At all relevant times, Defendants were Plaintiff's "employer" within the meaning of NYLL §§ 2(6) and 190(3).

81. 12 N.Y.C.R.R. § 142-2.2 required Defendants to pay Plaintiff at a rate not less than one and one-half times his regular rate of pay for each hour worked in excess of forty (40) in a workweek.

82. Defendants failed to pay Plaintiff the required overtime premium in violation of 12 N.Y.C.R.R. § 142-2.2 and NYLL §§ 650 et seq.

83. Defendants' violations of the NYLL were knowing, willful, and not in good faith.

84. Plaintiff is entitled to recover his unpaid overtime compensation, liquidated damages in an amount equal to 100% of the unpaid overtime compensation pursuant to NYLL § 663, attorneys' fees, costs, and pre- and post-judgment interest at the statutory rate.

**THIRD CAUSE OF ACTION — Unpaid Wages Under NYLL Articles 6 and 19**

*(NYLL §§ 191, 193, 198, 663 — Against All Defendants)*

85. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

86. Defendants agreed to pay, and were obligated by contract and by the NYLL to pay, Plaintiff at the rate of $80,000 per year following the salary increase agreed effective as of the beginning of 2025.

87. Defendants failed to pay Plaintiff the full balance of those agreed wages, underpaying Plaintiff by approximately $3,456 for the twelve (12) weekly pay periods between January 5, 2025 and March 23, 2025, during which Defendants paid Plaintiff at the former $65,000 rate notwithstanding the agreed increase.

88. Defendants further failed to pay Plaintiff for unauthorized deductions described herein, including the approximately $5,000 "insurance carve-out," in violation of NYLL § 193.

89. Plaintiff is entitled to recover the unpaid wages, liquidated damages equal to 100% of the unpaid wages under NYLL §§ 198 and 663, attorneys' fees, costs, and pre- and post-judgment interest at the statutory rate.

**FOURTH CAUSE OF ACTION — Unlawful Deductions Under NYLL § 193**

*(Against All Defendants)*

90. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

91. NYLL § 193(1) prohibits employers from making any deduction from the wages of an employee except those expressly authorized by law or as specified in writing by the employee for one of the narrow enumerated permissible purposes.

92. Defendants designated approximately $5,000 of Plaintiff's annualized base salary as funds that Plaintiff was required to use to purchase his own health-insurance coverage, without obtaining Plaintiff's written authorization in conformity with NYLL § 193 and without otherwise satisfying the statute's requirements.

93. Defendants' practice constituted an unlawful deduction from Plaintiff's wages in violation of NYLL § 193.

94. Plaintiff is entitled to recover the unlawfully deducted amounts, liquidated damages equal to 100% of those amounts under NYLL §§ 198(1-a) and 193(5), attorneys' fees, costs, and pre- and post-judgment interest.

## FIFTH CAUSE OF ACTION — Breach of Contract
### *(Against the Corporate Defendants)*

95. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

96. The November 4, 2024 Employment Agreement is a valid, binding, integrated written contract between Plaintiff and the Corporate Defendants.

97. Plaintiff fully performed all of his obligations under the Employment Agreement.

98. The Corporate Defendants breached the Employment Agreement, including by:

99. failing to provide Plaintiff with 90 days' written notice of termination as required by § 18.A;

100. invoking the "violation" exception in § 18.B without any bona fide "violation" by Plaintiff and without any contemporaneous documentation thereof;

101. failing to pay Plaintiff the full agreed compensation, including the unpaid balance of approximately $3,456 attributable to the $80,000 annualized rate agreed effective as of the beginning of 2025;

102. failing to reimburse Plaintiff for approximately $8,000 in necessary business expenses as required by §§ 4 and 7; and

103. designating a portion of Plaintiff's wages as a self-funded "insurance allowance" without lawful authorization.

104. As a direct and proximate result of the Corporate Defendants' breaches, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to the unpaid balance of his agreed compensation, the compensation that would have become payable during the remainder of the fixed one-year term (approximately fourteen (14) weeks, i.e., not less than

approximately $20,000 at the $80,000 annualized rate), or, at a minimum, thirty (30) days of wages and benefits in lieu of the contractual notice required by § 18.A,, the value of the contractual auto-renewal expectancy to the extent recoverable, and reasonable attorneys' fees pursuant to § 25 of the Employment Agreement.

105.   Plaintiff is entitled to recover contract damages together with prejudgment interest pursuant to CPLR §§5001 and 5004 from the date each payment became due.

## SIXTH CAUSE OF ACTION — Breach of the Implied Covenant of Good Faith and Fair Dealing

### *(Against the Corporate Defendants — Pleaded in the Alternative)*

106.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

107.   Every contract governed by New York law contains an implied covenant of good faith and fair dealing.

108.   The Corporate Defendants breached that covenant by manufacturing a "for cause" recital on the date of termination, by attempting to impose post-hoc reimbursement procedures not stated in the Employment Agreement, by offering Plaintiff a release of all claims in exchange for one week of pay, and by otherwise engaging in conduct that frustrated Plaintiff's right to receive the benefit of his bargain.

109.   As a direct and proximate result of the Corporate Defendants' breaches of the implied covenant, Plaintiff has suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION — Unjust Enrichment / Quantum Meruit

### *(Pleaded in the Alternative — Against All Defendants)*

110.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

111.   Plaintiff conferred a benefit on Defendants by advancing approximately $8,000 of his own funds for business expenses incurred on Defendants' construction projects.

112.   Defendants accepted and retained that benefit and applied it to their projects.

113. Equity and good conscience require Defendants to make restitution to Plaintiff in the amount of the benefit conferred.

## EIGHTH CAUSE OF ACTION — Declaratory Judgment
### *(28 U.S.C. §§ 2201–2202 — Against All Defendants)*

114. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

115. An actual, justiciable controversy exists between Plaintiff and Defendants concerning (a) whether the Separation Agreement tendered on July 31, 2025 is binding on Plaintiff and operates to release any of Plaintiff's claims, and (b) whether the restrictive covenant set forth in § 19 of the Employment Agreement is enforceable against Plaintiff.

116. Plaintiff never executed the tendered Separation Agreement. No meeting of the minds occurred, no consideration was accepted, and the seven-day revocation period recited in the document never began to run. The Separation Agreement is therefore unenforceable against Plaintiff and the general release contained therein is inoperative and does not bar any claim asserted in this action.

117. The restrictive covenant in § 19 of the Employment Agreement is unenforceable under New York law because it is overbroad in geographic and temporal scope, is not necessary to protect any legitimate protectable interest of Defendants, imposes undue hardship on Plaintiff, and is injurious to the public. The covenant is further unenforceable because Defendants, not Plaintiff, breached and repudiated the Employment Agreement by terminating Plaintiff without cause and without the contractually required notice. See Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 N.Y.2d 84 (1979).

118. Plaintiff is entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that (a) the tendered Separation Agreement is not binding on Plaintiff and its release is void and inoperative, and (b) the restrictive covenant in § 19 of the Employment Agreement is unenforceable against Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, granting the following relief:

A. Declaring that Defendants' acts and practices complained of herein are unlawful under the FLSA, the NYLL, and the common law of New York;

B. Awarding Plaintiff unpaid overtime compensation in an amount to be determined at trial;

C. Awarding Plaintiff unpaid wages and unlawfully deducted amounts in an amount to be determined at trial, including the approximately $3,456 unpaid balance of the agreed salary increase and the approximately $5,000 unlawful insurance carve-out;

D. Awarding Plaintiff liquidated damages equal to 100% of the unpaid wages and overtime compensation under both 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

E. Awarding Plaintiff damages for breach of contract and breach of the implied covenant of good faith and fair dealing, including but not limited to (i) the unpaid balance of the agreed compensation; (ii) compensation payable for the remainder of the fixed one-year term, or at a minimum thirty (30) days of wages and benefits in lieu of contractual notice; (iii) unpaid business-expense reimbursements; and (iv) consequential damages as the Court may deem just and proper;

F. Awarding Plaintiff restitution, in the alternative, for the value of business-expense advances conferred upon Defendants;

G. Entering a declaratory judgment that the tendered July 31, 2025 Separation Agreement is not binding on Plaintiff and its release is void and inoperative, and that the restrictive covenant in § 19 of the Employment Agreement is unenforceable against Plaintiff;

H. Awarding Plaintiff pre- and post-judgment interest as provided by law, including prejudgment interest pursuant to CPLR §§ 5001 and 5004 on all recoverable New York Labor Law and contract damages at the rate of 9% per annum;

I. Awarding Plaintiff his reasonable attorneys' fees and costs incurred in this action pursuant to 29 U.S.C. § 216(b), NYLL §§ 198(1-a) and 663(1), and § 25 of the Employment Agreement; and

J.   Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right by a jury, pursuant to Federal Rule of Civil Procedure 38(b).

Dated:      Brooklyn, New York
            July 14, 2026

Respectfully submitted,

PALLOJ LAW PLLC

By: /s/ *Malvina Palloj*
Malvina Palloj, Esq.
8212 17th Avenue
Brooklyn, New York 11214
Tel: (347) 453-1239
Email: malvina@pallojlaw.com

Attorneys for Plaintiff Christo Motska